## In re Cinci Taxes

*E. D. Brown*, for petitioner.

DUMBAULD, P. J., December 19, 1941.—The county commissioners in this proceeding pray the court for

approval of a compromise of taxes assessed against real estate in Nicholson Township, formerly owned by Serafino Cinci and sold to the county commissioners for delinquent taxes.

Taxes, interest, penalties and costs for the years 1930 to 1932 and 1937 to 1940 amount to $6,713.50. Taxes for the years 1934 to 1936 have been paid.

The proposition advanced by the petition is to settle a tax bill of $6,713.50 by the payment of $1,000, and thereupon to authorize a commissioners' deed reconveying the property to its former owner.

The testimony shows that the area of the surface involved is 97.618 acres. Upon this acreage there are erected 7 three-room, one-story frame houses; 11 four-room, one-story frame houses, and 1 two-room, one-story frame house. Most of these houses are occupied.

In addition approximately 45 acres of Sewickley coal are included.

A number of different owners have had title to this coal and mining operations have been conducted thereon by these different owners. Mr. Cinci owned and operated the mine from 1931 to 1937, inclusive.

In the year 1930, the property in its entirety was assessed at $23,410; in 1931, at $23,950; in 1932, at $19,350; in 1937, at $9,650; in 1938, at $10,030; in 1939, at $10,020, and in 1940, at $7,730. The average assessment for these seven years is $14,877.14.

It is contended that these assessments were excessive. To establish this contention testimony was taken in behalf of petitioners.

By this testimony it was undertaken to show the fair market value of the property from 1930 to 1940, inclusive.

R. Boyd Hays placed the value of the surface land at $20 to $25 per acre. He valued the coal at $125 per acre.

Isaac Woods placed the value of the surface at $25 per acre and declined to place a value upon the coal.

Randolph Fast put a value of $25 per acre on the surface and from $100 to $125 per acre on the coal.

William J. Reilly, a former owner of the coal property, said the surface land was worth $25 per acre and the coal from $100 to $125 per acre. When his attention was called to the houses on the surface, he changed his estimate to $30 per acre. Reilly is the only witness who mentioned the presence of the houses on the land.

Walter McManus fixes a price of $15 to $25 per acre as a fair market value.

John A. Corder and Vincent Coreal served as assessors of Nicholson Township through all these years. Corder's term expired in 1937. At that time Coreal became the assessor. They both testify that in making assessment of Nicholson Township property for tax purposes they seek to make the assessed value equal to one third of the fair market value. It is to be noted that Corder, as assessor, in the application of this rule, fixed the assessment on this property for 1937 at $9,650, and that Coreal likewise, in the application of the rule, assessed the property, in 1938, for $10,030; in 1939, for $10,020, and in 1940, for $7,730. No one appealed from these assessments.

From this testimony given by witnesses selected by petitioners, it would be fair to find that the surface containing 97.618 acres, at $30 per acre, has a fair market value of $2,928.54. The coal estimated at 45 acres and with practical uniformity valued at $125 would have a fair market value of $5,625. The total of these two sums is $8,553.54. We are asked to authorize the restoration of this property to its former owner for $1,000.

As noted before, the average assessment for the seven years in question is $14,877.14.

If the testimony of the assessors that the property is assessed at one third of its market value is accepted, the average assessment should have been $2,851.18.

This sum is approximately twenty percent of the average of $14,877.14. If we accept the valuation placed

upon the property by the witnesses whose testimony we have referred to, the assessment for the seven years should have been a fractional part of the total assessment, the fraction having a numerator of 2851.18, and a denominator of 14,877.14. This is approximately twenty percent. That is, an assessment at one third of the fair market value fixed by the witnesses is approximately twenty percent of the actual assessment for the years in question. Twenty percent of the total tax charged, namely, $6,713.50, is $1,342.70.

The trial judge cannot say that the compromise offered is proper and to the advantage of the county and other interested taxing authorities. If we were bound, as we are not, by the estimates of the values fixed by these witnesses, the lowest amount that could possibly be considered equitable would be the sum of $1,342.70 as ascertained by the preceding calculation. It is reasonable to assume that these witnesses gave testimony as favorable to the prayer of the petition as they could conscientiously do. However, in order to place the property in a situation where it will again become productive of taxes really paid, we are disposed to approve the compromise upon the condition that the sum to be paid shall be increased to $1,342.70.

### Order of court

Now, December 19, 1941, upon and after consideration of the foregoing petition for compromise of taxes, it is ordered and directed that the prayer of the petition be refused unless, within 15 days from the date hereof, the former owner, Serafino Cinci, shall stipulate for the payment of $1,342.70 in compromise of the delinquent taxes described in the petition and shall actually pay the said sum to the county commissioners for the interested taxing authorities. Upon the filing of such stipulation and the payment of the said sum, the compromise will be approved.